UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CARLETON CONSTRUCTION, LTD.                CIVIL ACTION

VERSUS                                     NO: 11-870

SOUTHERN STATES PLUMBING,                  SECTION: J(4)
INC. AND WILLIAM A. WISS,
JR.

## ORDER AND REASONS

Before the Court are Plaintiff's **Motion for Summary Judgment and Memorandum in Support (Rec. Doc. 25),** Defendants' **Memorandum in Opposition (Rec. Doc. 31)**, and Plaintiff's **Reply (Rec. Doc. 34).** The motion is before the court, with oral argument having been held on Wednesday October 26, 2011.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

The material facts of this contractual dispute are largely undisputed. This lawsuit arises out of the construction of the Lakeside Apartments in Slidell, Louisiana (the "Lakeside Project"). On January 14, 2008, Plaintiff Carleton Construction, Ltd. ("Carleton"), the prime subcontractor for the Lakeside Project, entered into a written subcontract ("Subcontract") with Defendant Southern States Plumbing ("Southern States"), under which Southern States was to provide plumbing materials and labor for the project. Southern States subsequently subcontracted a portion of the work to La-Tex Plumbing, LLC ("La-Tex").

Under the terms of the Subcontract, Southern States agreed

to comply with all federal, state, and local laws and regulations in its performance of its duties under the Subcontract, and agreed to indemnify Carleton for any assessments, fines, taxes, or penalties it incurred on account of Southern States' noncompliance with such laws.[1]  It also contained a non-exhaustive list of events which would constitute a failure to perform by Southern States, and further provided that Southern States would be liable to Carleton for all damages, including attorney's fees and costs, incurred by Carleton as a result of Southern States' failure to perform.[2]  The President and owner of Southern States, Mr. William A. Wiss, Jr. executed a clause personally guaranteeing Southern States' performance under the terms of the Subcontract.[3]

On October 7, 2009, after completion of the Lakeside Project, Carleton and Southern States entered into a Compromise, Release, and Indemnity Agreement ("Compromise Agreement")

---

[1]  See Rec. Doc. 25, Exh. A, ¶ 3.

[2]  Rec. Doc. 25, Exh. A, ¶ 12; ¶ 13(a).

[3]  See Rec. Doc. 25, Exh. A, p. 14 ("If Subcontractor is a corporation, partnership, or limited liability company, the undersigned guarantees the obligations of Subcontractor, including but not limited to Subcontractor's performance in accordance with the terms of this Agreement and payment by Subcontractor to its sub-subcontractors, suppliers, materialmen, laborers, and artisans.  Such guarantee shall be direct and primary, and shall not require exhaustion of remedies against Subcontractor or the joinder of Subcontractor in any proceeding to enforce such guarantee.").

relating to various claims asserted by Southern States in a separate relating to the Lakeside Project and other projects. The Compromise Agreement contained an indemnification clause under which Southern States agreed to indemnify Carleton from "any and all actions and cases of action, claims, demands, or liabilities, including . . . losses, damages, or expenses, including . . . .attorneys fees, arising out of or related to the services, work, labor and/or materials . . . on the projects."[4]

The Compromise Agreement further acknowledged that the Department of Labor was investigating Southern States' subcontractor, La-Tex for failure to pay its laborers prevailing wages on the Lakeside Project, in violation of the Davis Bacon and Related Acts, 40 U.S.C. §§ 3141, *et seq.*[5] As a result, the parties agreed that Carleton would withhold $150,000.00 of the proceeds due to Southern States under the Lakeside Project subcontract in escrow, to be released upon the complete resolution of the Davis Bacon Issues.[6] The agreement also contained a clause which allocated responsibility for any Department of Labor assessments incurred by La-Tex:

---

[4] See Rec. Doc. 25, Exh. A, Tab 2, ¶ 8.

[5] The other "Related Acts" were the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq.* and the Contract Work Hours and Safety Standards Act, 40 U.S.C. §§3701, *et seq.*

[6] See Rec. Doc. 25, Exh. A, Tab 2, ¶ 3, ¶ 7.

> **"To the extent that Davis Bacon Issues exist and there is a federal finding by the Department of Labor or related federal agency ("Federal Finding") that LaTex failed to pay prevailing wages as defined by the Davis Bacon Act, 40 U.S.C.A. 276 ("Wages"), and that after a hearing or upon a conclusory showing that [Southern States], [Carleton], or General Contractor are also deemed responsible for Wage restitution, [Carleton] agrees to share dollar for dollar with [Southern States] the cost of unpaid Wages with [Southern States] up to a cap of $44,835.06, such that [Carleton] might be responsible for a total not to exceed $22,417.53. Any additional unpaid wages will be funded solely by [Southern States]."[7]**

Around the beginning of February 2011, the United States Department of Labor levied assessments against Southern States and La-Tex for their failure to pay prevailing wages under the Davis Bacon and Related Acts.  Of the $210,797.76 assessment, $187.942.65 was assessed to La-Tex, and $22,885.11 was assessed to Southern States.  Southern States agreed to use the $150,000.00 in escrow to pay a portion of the assessment, but because of temporary liquidity problems, it was unable to satisfy the remainder of the balance.  Accordingly, the Department of Labor looked to Carleton to satisfy the balance of the assessments, which amounted to $60,791.44.  In response, Carleton offered to advance this sum to the Department of Labor in exchange for Southern States' agreement to repay the advance, but

---

[7]  Rec. Doc. 25, Exh. A, Tab 2, ¶ 6.

4

Southern States apparently refused.  Carleton thereafter
satisfied the assessment, with the $150,000.00 from the escrow
account and $60,791.44 of its own funds.  Carleton also incurred
$33,745.00 in connection with the resolution of the Department of
Labor assessments, and $12,832.10 in attorney's fees, costs, and
expenses in connection with the instant lawsuit.

Carleton instituted the present action to enforce the
indemnity provisions of the Subcontract against Southern States
and William Wiss in his individual capacity, on April 15, 2011
pursuant to diversity jurisdiction.  It sought to recover
$107,368.54, representing the total amount of sums it advanced to
satisfy the Department of Labor assessments against Southern
States and La-Tex, as well as attorney's fees, costs, and
expenses incurred in resolving the assessments and in instituting
the present action.  Southern States and Wiss filed an Answer and
Counterclaim on June 1, 2011.  On September 12, 2011, Carleton
filed the instant Motion for Summary Judgment.

## PARTIES' ARGUMENTS

Carleton submits that it is entitled to recover the full
amount of sums expended to satisfy the Department of Labor
assessments against Southern States and La-Tex, as well as costs,
expenses, and attorney's fees incurred in both the investigation
and resolution of the assessments and in the present suit, all in

5

accordance with the indemnity provisions of the Subcontract. Furthermore, because Mr. Wiss personally guaranteed Southern States' obligations under the Subcontract, it contends that Wiss and Southern States are jointly and severally liable for the total sum of $107,368.54.

Southern States and Wiss oppose Carleton's Motion on two grounds. First, they submit that the Compromise Agreement constitutes a valid compromise as defined under Louisiana law, and accordingly, they argue that Carleton's recourse against Southern States is governed by and limited to the terms of the agreement. Southern States thus contends that Carleton's reliance on the Subcontract is misplaced. Because the unambiguous terms of the Compromise Agreement entitle Southern States to a credit in the amount of $22,417.53 towards any amounts owed as a result of the Department of Labor assessments, they claim that the amount of Carleton's claim must be reduced. Second, because Mr. Wiss never signed the Compromise Agreement in his individual capacity, they argue that he cannot be personally liable for any reimbursement owed by Southern States or for Carleton's costs and attorney's fees.

In response, Carleton argues that the Compromise Agreement does not alter the obligations of either Southern States or Mr. Wiss under the terms of the Subcontract. It contends that the Compromise Agreement is a commutative contract under Louisiana

law, under which either party may refuse to perform if the other party fails to perform.  Because its agreement to assume a portion of the assessment against La-Tex was contingent upon Southern States actually paying the balance of the assessment, which it failed to do, Carleton argues that Southern States is not entitled to any reduction of its obligations under the Subcontract.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See id. at 325; Little v.. Liquid Air Corp., 37 F.3d 1069, 1975 (5th Cir. 1996).

In diversity suits such as the instant lawsuit, federal courts apply the substantive law of the state in which they sit. Exxon Corp. v. Burglin, 42 F.3d 948, 950 (5th Cir.1995) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)). The instant case presents a question of contractual interpretation under Louisiana law.

The interpretation of a contract is generally a legal question which may be properly resolved in a motion for summary judgment. Haglund v. TC Properties of Baton Rouge, L.L.C., 1999-2323, p. 4 (La. App. 1 Cir. 11/3/00), 770 So.2d 885, 887. A valid contract has the effect of law between the parties. La. Civ. Code art. 1983. The role of a court in interpreting a contract is to determine the common intent of the parties. La. Civ. Code art. 2045. The search for the common intent of the parties necessarily begins with the words of the contract, in accordance with their ordinary meaning. Domed Stadium Hotel, Inc. v. Holiday Inns, Inc., 732 F.2d 480, 484, 732 F.2d 480 (5th Cir. 1984). "When the words of a contract are clear and explicit

8

and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046.  Thus, when the text of a contract is clear, the explicit meaning of that text "should not be disregarded under the pretext of pursuing its spirit."  <u>Prejean v. Guillory</u>, 2010-0740, p. 6-7 (La. 7/2/10), 38 So.3d 274, 279).

**A.  Are Carleton's Claims Under the Subcontract Barred by the October 7, 2009 Compromise Agreement?**

Carleton's claims, and its Motion for Summary Judgment, appear to rely exclusively on the terms of the Subcontract. Southern States, however, argues that the Compromise Agreement operated to release Carleton's claims based on the Subcontract and that its remedy is limited to enforcing the terms of the Compromise Agreement.

"A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."  La. Civ. Code art. 3071.  A compromise precludes the parties thereto from bringing an action based upon the matter compromised, but its scope is limited to "only those differences that the parties clearly intended to settle."  La. Civ. Code art. 3080; La. Civ. Code art. 3076.  The revision comments make clear that a compromise "must clearly express" those rights which it settles.

Here, the opening recitations of the Compromise Agreement appear to suggest that the parties intended the scope of the compromise to be quite broad.  Specifically, it state that they "desire to settle and compromise any and all disputes, claims, lawsuits, lien claims and obligations arising from the Projects."[8]  However, the recitations' admittedly broad language appears to be qualified by the agreement's actual operative provisions.  The Compromise Agreement contains detailed provisions in which the scope of each parties' release is explained.  In paragraph one, for example, Southern States agreed to a comprehensive waiver of past, present, and future claims against Carleton arising out of the Lakeside Project.[9]  Carleton's waiver and release, however, was more limited in scope.  It states:

**"As part of this Agreement, [Carleton] waives and**

---

[8]  Rec. Doc. 25, Exh. A, p.2.

[9]  See Rec. Doc. 25, Exh. A, ¶ 1 ("[Southern States] forever waives, discharges, compromises and releases any and all claims against the Project, Owner, General Contractor and [Carleton] . . . from any and all claims; lawsuits, demands; . . . liens or lien claims; bond claims of any nature; and all causes of action of any kind whatsoever, be it contractual, delictual, under common law, statute, equity or otherwise, which Subcontractor has or might have, known or unknown, foreseen or unforeseen, now existing or that might arise hereafter, directly or indirectly related to or arising out of [Southern States'] performance on, association with the Project and the Released Parties.").`

> releases any and all rights or claims it might have, if
> any, to indemnification for loss, costs, attorney's
> fees and expenses, which it . . . has incurred, or
> might incur, *up to the date of October 26, 2009,*
> *excluding those direct losses from Davis Bacon Issues*
> *described above . . ."*[10]

Thus, it appears that the plain language of the Compromise
Agreement expressly reserved Carleton's rights to seek indemnity
based on the terms of the Subcontract for losses arising after
October 26, 2009, as well as for losses which could arise from
La-Tex's violations of the Davis Bacon and Related Acts.  The
Court is bound to give this language effect.  Furthermore, other
provisions of the agreement appear to contemplate that the
indemnity provisions of the Subcontract would continue to be
operative.  Paragraphs 8 and 12, for example, state:

> "*IN ADDITION TO THE INDEMNITY PROVISIONS SET FORTH IN*
> *THE SUBCONTRACTS*, [SOUTHERN STATES] EXPRESSLY AGREES TO
> INDEMNITY AND HOLD HARMLESS [CARLETON] FROM ANY AND ALL
> ACTIONS AND CASES OF ACTION, CLAIMS, DEMANDS, OR
> LIABILITIES, INCLUDING, BUT NOT LIMITED TO. . . LOSSES,
> DAMAGES, OR EXPENSES, INCLUDING BUT NOT NECESSARILY
> LIMITED TO, ATTORNEYS FEES, ARISING OUT OF OR RELATED
> TO THE SERVICES, WORK, LABOR, AND/OR MATERIALS PROVIDED
> BY, THROUGH, OR TO [SOUTHERN STATES] ON THE
> PROJECTS..."[11]
>
> ***
>
> "[Southern States] further agrees and acknowledges that
> all guarantees and warranties provided by or through
> [Southern States] shall not be amended or modified in
> any matter by this waiver and release, and that same

---

[10]   Rec. Doc. 25, Exh. A, ¶ 9 (emphasis added).

[11]  Rec. Doc. 25, Exh. A, Tab 2, ¶ 8 (emphasis added).

11

are in full force and effect."[12]

Accordingly, the Court concludes that the unambiguous language of the Compromise Agreement reveals that Carleton is entitled to seek indemnity under the provisions of the Subcontract for losses arising out of La-Tex's violations of the Davis Bacon and Related Acts.  Carleton's claims are not limited to the enforcement of the terms of the Settlement Agreement.

**B.  Is Southern States Entitled to a $22,417.53 Credit?**

Having concluded that the Compromise Agreement does not preclude Carleton's claims based on the Subcontract, the Court now turns to the merits of its claims for indemnity.  Carleton argues that several clauses unambiguously establish that Carleton is entitled to indemnity from Southern States.  The first relevant clause provides:

> **"[Southern States] shall comply with all Federal, state and local laws and regulations. . . insofar as applicable to [Southern States] in connection with the performance of [the Subcontract], shall pay all related taxes, assessment and fines or penalties, and shall and does hereby indemnify, defend and save [Carleton] harmless from and against any taxes, assessments and fines or penalties and all other costs and expenses incurred by reason of the nonobservance of any such laws, rules and regulations."[13]**

_____

[12]  Rec. Doc. 25, Exh. A, Tab 2, ¶ 12.

[13]  Rec. Doc. 25, Exh. A, ¶ 3.

Additionally, the Subcontract provides that Southern States would be liable to Carleton for all costs, including attorney's fees, and damages incurred by Carleton arising out of Southern States' failure to perform its contractual obligations.[14]  Among the enumerated events which constitute a failure to perform by Southern States are:

> **(b) [Southern States] does not make prompt and proper payments to[Southern States'] employees, agents and/or sub-subcontractors;**
>
> ***
>
> **(d) [Carleton] is damaged by an act for which [Southern States], or [Southern States'] sub-subcontractors are responsible;**
>
> ***
>
> **(i) [Carleton] becomes subject to any claim or penalty by any governmental agency due to [Southern States's] violation of any law, ordinance, administrative ruling and/or court order.[15]**

Under any of the above clauses, it is indisputable that Southern States agreed to indemnify Carleton for the full amount of the Department of Labor assessments it incurred, along with any associated attorney's fees, costs, and expenses.  Indeed,

---

[14] <u>See</u> Rec. Doc. 25, Exh. A, ¶ 13(a) ("Subcontractor shall be liable to Contractor for all costs (including reasonable attorney's fees) and damages incurred by Contractor due to or arising from the failure of performance by Subcontractor, or the failure of Subcontractor to keep the progress of the Work up to that required by this Agreement or other Contract Documents or as directed by Contractor."

[15] Rec. Doc. 25, Exh. A, ¶ 12(b), (d), (i).

Southern States does not contend that Carleton is not entitled to indemnity for the balance of the unpaid wages assessment, or that its computation of attorney's fees, costs, and expenses are inaccurate. Instead, its primary contention is that it is entitled to a $22,417.53 credit pursuant to paragraph six of the Compromise Agreement. Paragraph six of the Compromise Agreement provides:

> **"To the extent that Davis Bacon Issues exist and there is a federal finding by the Department of Labor or related federal agency ("Federal Finding") that LaTex failed to pay prevailing wages as defined by the Davis Bacon Act, 40 U.S.C.A. 276 ("Wages"), and that after a hearing or upon a conclusory showing that [Southern States], [Carleton], or General Contractor are also deemed responsible for Wage restitution, [Carleton] agrees to share dollar for dollar with [Southern States] the cost of unpaid Wages with [Southern States] up to a cap of $44,835.06, such that [Carleton] might be responsible for a total not to exceed $22,417.53. Any additional unpaid wages will be funded solely by [Southern States]."**[16]

The Compromise Agreement is a bilateral, or synallagmatic contract, where "the parties obligate themselves reciprocally, so that the obligation of each party is correlative to the obligation of the other." La. Civ. Code art. 1908; see also Southern Nights, Inc. v. Barnett, 2004-0411, p.4 (La. App. 4.

---

[16] Rec. Doc. 25, Exh. A, Tab 2, ¶ 6.

14

Cir. 8/18/04), 881 So.2d 1225, 1228 (holding that a compromise is a bilateral contract).  It is also a commutative contract.  See La. Civ. Code art. 1911 and cmt. (b)(explaining that "correlative performances are the essential feature of commutative contracts").  In the present case, under paragraph 6, Carleton's obligation was to "share dollar for dollar with [Southern States] the cost of unpaid Wages . . . up to a cap of $44,835.06, such that [Carleton] might be responsible for a total not to exceed $22,417.53."[17]  In turn, Southern States agreed to assume responsibility for any of La-Tex's unpaid wages which exceeded $44,835.06.  "Either party to a commutative contract may refuse to perform his obligation if the other has failed to perform or does not offer to perform his own at the same time, if the performances are due simultaneously."  La. Civ. Code art. 2022.  It is undisputed that Southern States failed to pay the balance of unpaid wages in accordance with the terms of paragraph 6, on account of liquidity issues it was experiencing at the time.

Nonetheless, Southern States argues that article 2022 is inapplicable here.  It cites comment (c) to article 2022, which explains that the article applies "only where the performances of the parties are to be rendered simultaneously, either because the contract so provides, or because the contract by its nature

---

[17]   Rec. Doc. 25, Exh. A, Tab 2, ¶ 6.

demands simultaneous performances." Here, it correctly notes that the Compromise Agreement does not explicitly require simultaneous performance. It further argues that the payment of different sums of money does not "by its nature" demand simultaneous performance, and that Southern States and Carleton could have made payments to the Department of Labor "on different days, in different weeks, months, or even years." Here, the Court disagrees.

The undisputed facts show that, because Southern States was unable to pay the amount of the full amount of the assessment when it was levied, the Department of Labor turned to Carleton for satisfaction of the unpaid wages. Thus, contrary to Southern States' contentions, the nature of payments under the Compromise Agreement did, in fact, require payment to be made simultaneously, and upon demand by the Department of Labor. Southern States' contentions to the contrary ignore the reality of the undisputed events as they actually occurred.

Accordingly, when Southern States informed Carleton that it would be unable to satisfy the remaining balance of the assessment, as it was contractually obligated to, Carleton had the right to withhold the performance of its own obligations, whereby it agreed to assume responsibility for $22,417.53 of the La-Tex assessments. "Louisiana law does not permit a party to repudiate its obligations while continuing to retain the benefits

16

of an agreement." <u>Al Copeland Enterprises, Inc. v. C.T.V.</u>
<u>Systems, Inc.</u>, 1993 WL 191152, at *8  (E.D. La. 1993).  Thus,
Southern States is not entitled to seek to enforce this provision
against Carleton, and is not entitled to a credit under paragraph
6 of the Compromise Agreement.[18]

**C.  Individual Liability of William Wiss**

It is undisputed that Mr. Wiss never signed the Compromise
Agreement dated October 7, 2009 in his personal capacity.
Defendants argue that Carleton's recovery is limited to the terms
of the Compromise Agreement, and because Mr. Wiss never signed
the Compromise Agreement, Defendants contend that he cannot be

--------

[18] Southern States contends that Carleton is seeking to
enforce the terms of the Compromise Agreement while
simultaneously attempting to escape its own obligations
under the same agreement.  If Carleton had not retained
the right to sue for indemnity under the terms of the
Subcontract, and was instead suing to enforce the terms
of the Compromise Agreement, Southern States would be
correct.  With respect to reciprocal obligations,
established Louisiana law provides that the party seeking
damages for the nonperformance of the terms of an
agreement must have fulfilled or must be prepared to
perform his own duties under the contract.  <u>See</u> La. Civ.
Code art. 1993; <u>Vredenburg v. Baton Rouge Sugar Co.</u>, 28
So. 122, 124 (La. 1899).  However, the instant lawsuit
seeks only to enforce Southern States' indemnity
obligations under the Subcontract, a right which was
expressly reserved by the terms of the Compromise
Agreement.  Carleton makes no reference to the terms of
the Compromise Agreement, except to the extent that
Southern States has asserted it as a defense to payment.
Accordingly, the Court finds this argument unpersuasive.

personally liable to Carelton, in any case.  Because the Court
has previously rejected the argument that Carleton's recovery is
limited to the terms of the Compromise Agreement, however, the
Court finds this contention to be without merit.

In the alternative, Defendants argue that the Carleton has
failed to submit sufficient evidence to show that Mr. Wiss ever
personally guaranteed the Subcontract.  Instead, Defendants argue
that Mr. Wiss only signed the agreement as a representative of
Southern States, as evidenced by the fact that the words
"Southern States Plumbing, Inc." appears above the signatory line
for the guarantee clause.  Thus, under La. Civ. Code art. 2056,
it contends that this ambiguity must be construed against
Carleton, as the party who furnished the text of the agreement.[19]

Under art. 2056, ambiguity in a written contract is
construed against the party who furnished the contract, but only
when there is "doubt that cannot be otherwise resolved."
Further, Louisiana courts have held that the allegedly ambiguous
provisions of the agreement must be susceptible of competing
reasonable interpretations in order for article 2056 to apply.
See, e.g., Genghis Kahn, Inc. v. Formosa Hotel Inc., 2003-1218,
p. 5 (La. App. 4. Cir. 6/2/04), 876 So.2d 923, 926; Crum v. Crum,
330 So.2d 925, 927 (La. Ct. App. 1 Cir. 1976).  Here, Defendants'

---

[19] After raising this argument in their briefs, Defendants
essentially conceded that it lacked merit during oral
argument.

proffered interpretation would require the Court to conclude that the parties had agreed for Southern States to guarantee its own obligations under the contract. Such an interpretation is plainly unreasonable as a matter of law and must be rejected.

Furthermore, other courts have rejected similar arguments regarding allegedly ambiguous guarantor signatures. In <u>American Bank & Trust Co. Of Houma v. Wetland Workover, Inc., et al</u>, for example, three corporate officers signed loan guarantees for a corporate loan. On the bank's loan forms, the signature line gave each officer's name and corporate position. 523 So.2d 942, 943 (La. App. 4 Cir. 1988). In affirming the trial court, the Louisiana Fourth Circuit Court of Appeals rejected the officers' arguments that the guarantees had been signed only on behalf of the corporation. <u>Id.</u> at 945. It explained that the "notation of corporate position on the guarantees [was] merely a title identification, instead of a signature in a representative capacity." <u>Id.</u> Furthermore, the court reasoned that "to construe the signatures as indicating that the guarantors executed the guarantees in their corporate capacity" would essentially mean that the bank had agreed to have the corporate guarantee its own obligations under the loan agreement, which "would render the [guarantee] meaningless." <u>Id.</u>; <u>see also Veterans Commercial Properties, LLC v. Barry's Flooring, Inc, LLC</u>, 11-CA-6, p. 7 (La. App. 5 Cir. 5/24/11), 67 So.3d 631, 631

("The notation of a corporate position, or in this case, the notation of the company's name,'is merely a title identification instead of a signature in a representative capacity.'")(internal citations omitted).  Here, similarly, Defendants' arguments would essentially nullify the guarantee provision of the Subcontract. Accordingly, the Court concludes that Mr. Wiss signed the Subcontract guarantee in his personal capacity.

As a result, pursuant to the terms of the Subcontract and Guarantee, Southern States and Mr. Wiss are each liable, severally and *in solido*, for the total amount of $107,368.54, which represents all sums advanced by Carleton is satisfaction of the La-Tex Department of Labor assessments, as well as Carleton's attorney's fees, expenses, and costs incurred in resolving the Department of Labor assessments and in the present lawsuit.

### CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiff's **Motion for Summary Judgment (Rec. Doc. 25)** is hereby **GRANTED**.  Judgment will hereafter be entered in favor of Plaintiff and against Defendants, severally and *in solido*, in the amount of $107,368.54.

New Orleans, Louisiana, this 26th day of October, 2011.

CARL J. BARBIER

UNITED STATES DISTRICT COURT